IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NIGEL BAPTISTE | * | |
| v. | * | Civil No. RDB-11-1356 |
| UNITED STATES OF AMERICA | * | |

* * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-06-0171 |
| NIGEL BAPTISTE | * | |

**MEMORANDUM OPINION**

The petitioner Nigel Baptiste has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 271). In his Motion to Vacate, Petitioner challenges his 300-month sentence on grounds that he received ineffective assistance from trial counsel. Petitioner also alleges that trial counsel had a conflict of interest, because trial counsel previously represented one of Petitioner's codefendants in a previous case. Upon reviewing the Motion and the Government's opposition thereto, this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 271) is DENIED.

BACKGROUND

On February 21, 2007, a jury found Nigel Baptiste ("Petitioner") guilty of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, and four counts of possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1). Judgment, ECF No. 161. On May 8, 2007, this Court sentenced Petitioner to a 300-month prison term for each count, to be served concurrently, with a five-year period of supervised release. *Id.*

The facts of this case are taken from the United States Court of Appeals for the Fourth Circuit's decision affirming Petitioner's conviction in 2010. *See United States v. Baptiste*, 596 F.3d 214 (4th Cir.

2010). In spring of 2005, the Sheriff's Department of Cecil County, Maryland, investigated a large-scale cocaine distribution ring in the neighborhood of Winding Brook. *Id.* at 217. After a period of surveillance, officers identified an individual named Larry Brown ("Brown") as a mid-level dealer for the cocaine ring. *Id.* In November 2005, the officers determined that Petitioner supplied Brown with cocaine. *Id.* On January 2, 2006, officers arrested Petitioner during a delivery of cocaine to Brown. *Id.*

On May 11, 2006, a federal grand jury indicted Petitioner on one count of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, and four counts of possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1). Superseding Indictment, ECF No. 12. The grand jury also indicted eight other alleged members of the conspiracy, including Larry Brown. *See id.* Seven of Petitioner's codefendants pled guilty before trial. *See Baptiste*, 596 F.3d at 217. Petitioner and codefendant Lamar Ricks ("Ricks") proceeded to trial. *Id.* Ricks, however, pled guilty after the first day of the trial. *See id.* at 218. On February 21, 2007, after a six-day trial, a jury found Petitioner guilty on all five counts. *Id.* at 220. On May 8, 2007, this Court sentenced Petitioner to a 300-month prison term for each count, to be served concurrently, with a five-year period of supervised release (ECF No. 161).[1] Petitioner appealed his conviction to the United States Court of Appeals for the Fourth Circuit, which affirmed Petitioner's conviction on February 26, 2010. *See Baptiste*, 596 F.3d 214.

On May 18, 2011, Petitioner filed the pending Motion to Vacate (ECF No. 271). In his Motion, Petitioner claims that he received ineffective assistance of counsel from his trial attorney. Specifically, he argues that trial counsel failed to make proper objections, call witnesses at trial, and pursue certain jury instructions. Petitioner also alleges that trial counsel had a conflict of interest, because he had previously represented Larry Brown in another case. Upon review of Petitioner's claims, this Court finds that Petitioner received effective assistance of counsel and that trial counsel did not have a conflict of interest. For these reasons, Petitioner's Motion to Vacate (ECF No. 271) is DENIED.

---

[1] This Court reduced Petitioner's sentence on each count to 240 months in accordance with changes to the Federal Sentencing Guidelines regarding cocaine. Order Granting Motion to Reduce Sentence, ECF No. 268; *see also* 18 U.S.C. § 3582(c)(2).

## STANDARD OF REVIEW

In order to establish a claim for ineffective assistance of counsel, Petitioner must prove both elements of the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, Petitioner must show that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was unconstitutionally deficient, courts adopt a "strong presumption" that a counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689. Second, Petitioner must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id.* at 687. In order to establish this level of prejudice, petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is not sufficient; rather, the petitioner must meet both prongs of the *Strickland* test in order to be entitled to relief. *See id.* at 687.

Both the Supreme Court and the Fourth Circuit have given closer scrutiny to claims of ineffective assistance of counsel based on alleged conflicts of interest. *See, e.g., Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (holding that a defendant has the right to demonstrate a conflict of interest in cases of multiple representation); *United States v. Gilliam*, 975 F.2d 1050, 1054 (4th Cir. 1992) (remanding judgment to determine whether joint representation denied effective assistance of counsel to one codefendant when the other received a more favorable plea agreement). In deciding whether a conflict of interest rendered ineffective assistance of counsel, a defendant who raised no objection at trial "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348. A defendant may, however, waive the right to conflict-free representation. *See, e.g., United States v. Brown*, 202 F.3d 691, 697-98 (4th Cir. 2000) (finding that defendant "clearly knew enough to make a knowing, intelligent, and voluntary waiver" of his right to conflict-free representation).

## ANALYSIS

This Court first addresses Petitioner's claim that trial counsel had a conflict of interest because trial counsel represented one of Petitioner's codefendants in a previous case. This Court finds that trial

counsel did not have a conflict of interest as a result of the prior representation of Petitioner's codefendant. This Court will then confront Petitioner's claims regarding counsel's trial strategy. These claims likewise fail, because Petitioner has not demonstrated that his counsel's assistance was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).

**I.     Petitioner's Argument Alleging Trial Counsel's Conflict of Interest**

Petitioner claims that trial counsel had a conflict of interest because he previously represented one of Petitioner's codefendants, Larry Brown, in an unrelated matter. *See* Pet'r's Mot. 8; Pet'r's Supp. to Mot., ECF No. 278. Petitioner claims that this conflict adversely affected trial counsel's performance during his jury trial. *See id.* at 9. Petitioner also claims that he never had the opportunity to waive the conflict, because trial counsel failed to explicitly tell him that he had previously represented Brown. *See id.* Furthermore, this conflict caused Petitioner to "fear that he would get in trouble with the Court or with [trial counsel]" if he requested that Brown be called to testify on his behalf. *See id.* at 9 n.2.

A.  *Standard of Review for a Conflict of Interest Claim*

Petitioner "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" to succeed on this claim in his Motion to Vacate. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Petitioner can show he suffered an adverse effect if he establishes that "his attorney took action on behalf of one client that was necessarily adverse to the defense of another or failed to take action on behalf of one because it would affect another." *Mickens v. Taylor*, 240 F.3d 348, 360 (4th Cir. 2001) (en banc), *aff'd on other grounds*, 535 U.S. 162 (2002). Showing an adverse effect entails a three-prong analysis. *See id.* at 361. First, Petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. *Id.* Second, Petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to trial counsel at the time of trial counsel's tactical decision. *Id.* Finally, Petitioner must establish that trial counsel's failure to pursue that strategy or tactic was linked to the actual conflict. *Id.*

Petitioner explains that the alternative defense his trial counsel could have pursued was calling codefendant Larry Brown as a witness. Petitioner believes that testimony by Brown would have aided his

case, because Brown would have demonstrated that he was not involved in the conspiracy. *See* Pet'r's Mot. 10. While this argument may satisfy the first prong of the *Mickens* test by illustrating a plausible alternative defense strategy, 240 F.3d at 361, Petitioner does not meet the second and third prongs. Therefore, Petitioner fails to meet his burden under *Mickens*, because he does not demonstrate that he suffered an adverse effect resulting from trial counsel's prior representation of Brown.

    B. *Second Prong of* Mickens

Petitioner's argument fails to meet the second prong of *Mickens*, which requires that the proposed strategy be "objectively reasonable under the facts of the case known to trial counsel at the time the strategic decision was made." *Id.* On May 11, 2006, Petitioner and Brown, along with seven other defendants, were indicted together on the conspiracy charges. Superseding Indictment, ECF No. 12. Brown and the other codefendants reached plea agreements, while Petitioner went to trial. *See United States v. Baptiste*, 596 F.3d 214, 217-18 (4th Cir. 2010). In his plea agreement, Brown approved a set of facts that explicitly implicated Petitioner in the conspiracy to sell cocaine. *See* Gov.'s Resp., Ex. 1 5. There is absolutely nothing in the record of this case that would indicate that Brown would have provided testimony favorable to Petitioner.[2]

Moreover, trial counsel exhibited knowledge of Brown's plea agreement with the Government and expressly warned Petitioner of the possibility that Brown would testify against him at trial. *See* Pet'r's Mot., Ex. C. Although Brown did not testify at Petitioner's trial, trial counsel's correspondence with Petitioner demonstrated that he had information at the time indicating Brown's cooperation with the Government. *See* Pet'r's Mot., Ex. D. Given the information known to trial counsel at the time of trial, this Court finds that it would have been objectively unreasonable for trial counsel to call Brown as a witness. Therefore, Petitioner fails to meet the second prong of *Mickens*.

---

[2] There is no need for this Court to address the issue of whether Brown would have asserted his Fifth Amendment privilege against self-incrimination if he had been called as a witness by Petitioner.

C.  *Third Prong of* Mickens

Petitioner's argument does not satisfy the third prong of *Mickens*, because he fails to show how trial counsel's alleged conflict of interest relates to his decision not to call Brown as a witness in this case. 240 F.3d at 361. Petitioner submits that trial counsel represented Brown on cocaine distribution charges in 1998, which was eight years prior to Petitioner's trial. *See* Pet'r's Supp. to Mot. Petitioner, however, does not suggest that the two criminal activities were related, nor does he demonstrate how any information trial counsel may have received in his representation of Brown is related to this case. *See Mickens*, 240 F.3d at 359 (holding that there was no constitutional error due to a conflict of interest because trial attorney represented the victim "on an entirely unrelated charge"). As described above, trial counsel's decision not to have Brown testify was objectively reasonable when considering that Brown's plea agreement implicated Petitioner in the cocaine conspiracy. *See* Pet'r's Mot.; Exs. C, D. Given the facts listed in Brown's plea agreement, trial counsel likely realized the potentially damaging testimony Brown would have given and made a reasonable decision not to call Brown as a witness. Petitioner offers no facts showing that trial counsel's reluctance to call Brown as a witness resulted from the alleged conflict of interest. Accordingly, Petitioner fails to meet the third prong of *Mickens*.

In summary, Petitioner's argument cannot meet the three-factor *Mickens* test; therefore, Petitioner fails to establish an actual conflict of interest that adversely affected his attorney's performance. The facts of the case show that trial counsel made a reasonable decision of trial strategy when he refused to call Larry Brown as a witness, and his reasons for doing so were independent of his previous representation of Brown eight years before Petitioner's trial. Consequently, Petitioner's Sixth Amendment right to effective assistance of counsel was not violated on this ground. Having disposed of Petitioner's conflict of interest claim, this Court turns to Petitioner's remaining arguments.

## II.    **Petitioner's Arguments Based on Trial Strategy**

Petitioner attacks several of trial counsel's decisions, arguing that they resulted in ineffective assistance of counsel. *See* Pet'r's Mot. 14. First, Petitioner claims that trial counsel should have requested *voir dire* of the jury after an alleged incident of juror intimidation. *See id.* Second, Petitioner

asserts that trial counsel acted unreasonably when he did not object to the expert testimony of a police detective. *See id.* at 19. Third, Petitioner avers that trial counsel should have challenged the Government concerning whether officers gave proper *Miranda* warnings to Petitioner. *See id.* at 22. Finally, Petitioner faults trial counsel for not pursuing a jury instruction on the existence of multiple, separate conspiracies. *See id.* at 11.

    A. *Special* Voir Dire *to Address Alleged Juror Intimidation*

Petitioner claims that trial counsel should have moved for a special *voir dire* of the jury following an alleged incident of juror intimidation. On the first day of trial, this Court learned that some of the jurors felt intimidated by people outside the courtroom. *See United States v. Baptiste*, 596 F.3d 214, 217 (4th Cir. 2010). Specifically, the jurors thought that certain individuals were "staring them down" during a recess. *Id.* After the recess, this Court admonished the defendants, Petitioner and Lamar Ricks, and stated that any further intimidation of the jurors would not be tolerated. *Id.* at 217-18. On the following day, Ricks pled guilty to the charges against him, and the courtroom became noticeably less crowded for the remainder of the trial. *Id.* Petitioner argues that associates of Ricks intimidated the jury, and that the jurors attributed any negative feelings that arose out of that incident to Petitioner. *See* Pet'r's Mot. 18. Petitioner states that trial counsel acted unreasonably when he did not seek a special *voir dire* to demonstrate the existence of improper contact with the jury, thus his Sixth Amendment right to effective assistance of counsel was violated. *See id.* Petitioner believes a special *voir dire* would have automatically triggered prejudice in his case and would have entitled him to a new trial. *See id.* at 18-19. Petitioner's claim, however, fails both prongs of the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

        1.  Trial counsel was objectively reasonable in not seeking a special *voir dire* hearing.

To meet the first prong of *Strickland*, Petitioner must show that counsel's performance was so deficient as to fall below an "objective standard of reasonableness." 466 U.S. at 688. When assailing a choice that Petitioner's counsel made during his trial, Petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,*

7

466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  This Court must make a "fair assessment of attorney performance," which "requires that every effort be made to eliminate the distorting effects of hindsight . . . ."  *Id.*

Here, Petitioner fails to show that trial counsel acted in a manner that falls below an "objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  Petitioner argues that trial counsel should have called for a special *voir* dire to ascertain whether the alleged incident of juror intimidation negatively affected the jury's perception of him.  *See id*.  Petitioner assumes that the intimidating "stare-downs were somehow attributed to him;" however, that assumption, as the Fourth Circuit found, "is based on pure speculation."  *Baptiste*, 596 F.3d at 222.  No evidence in the record linked Petitioner to the individuals responsible for intimidating the jury, and Ricks's associates and family members stopped attending the trial after Ricks pled guilty.  *See id.*  Petitioner surmises that the jury may have viewed him as the "overseer" of the operation, so any actions by Ricks's associates would have "ultimately originated with [Petitioner] himself."  Pet'r's Mot. 18.  Such a tenuous claim, however, does not amount to a showing that trial counsel acted outside the "wide range of reasonable professional assistance" when he declined to petition the Court for a special *voir dire* hearing.  *Strickland*, 466 at 689.  Given the events at trial, it would have been reasonable to believe that the jury did not associate Petitioner with the individuals in the gallery who allegedly intimidated the jury.  Therefore, Petitioner's claim does not meet the first prong of *Strickland*.

        2. Counsel's decision to not seek a special *voir dire* hearing did not prejudice Petitioner.

In addition to Petitioner's inability to satisfy the first prong of *Strickland*, he does not meet the standard set forth by the second prong.  In order to fulfill the prejudice prong, Petitioner must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial."  *Strickland*, 466 at 687.  When establishing this level of prejudice, Petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Trial counsel's decision to not move for a special *voir dire* did not affect the outcome of Petitioner's case. Petitioner argues that a motion by trial counsel would have preserved the issue as to the alleged jury intimidation for appeal. *See* Pet'r's Mot. 15. Petitioner believes that he would have succeeded in his challenge of this Court's failure to conduct a special *voir dire* on appeal.[3] *See* Pet'r's Mot. 15. However, the Fourth Circuit expressly stated that "there is no evidence on the record that the alleged contact with the jury was such that it was likely to influence to verdict." *Baptiste*, 596 F.3d at 221. Furthermore, that court addressed the alleged conduct by witnesses in the hallway by stating that it would be "mere speculation for [the Court] to determine that the conduct prejudiced the jury against [Petitioner]." *Id.* at 221 n.3. Therefore, Petitioner's claim fails the second prong of *Strickland*.

B.  *Expert Testimony by a Police Detective*

Petitioner also argues that trial counsel rendered ineffective assistance when he failed to object to testimony by a police detective that included both expert and lay witness testimony. During Petitioner's trial, Detective Jim Russell ("Detective Russell"), who led the investigation of the cocaine conspiracy in this case, testified as both an expert and lay witness. *See Baptiste*, 596 F.3d at 223-24. On appeal, Petitioner claimed that Detective Russell's testimony violated Rule 702 of the Federal Rules of Evidence, which allows an expert witness to provide an opinion on a matter if the "specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). Petitioner claims that Detective Russell "provided factual testimony in his role as an investigator alongside subjective 'translations' of wiretap contents in his role as an expert witness," which caused the jury to improperly interpret Detective Russell's expert opinion as factual testimony. Pet'r's Mot. 19. On appeal, Petitioner argued that this Court and the Government should have made clearer delineations of Detective

---

[3] In his appeal to the United States Court of Appeals for the Fourth Circuit, Petitioner argued that this Court failed to adequately address the alleged jury intimidation. *See United States v. Baptiste*, 596 F.3d 214, 220-21 (2010). Petitioner asserted that *Remmer v. United States*, 347 U.S. 227 (1954), obligated this Court to automatically conduct a *voir dire* examination of the jurors upon learning of the alleged incident. *Id.* Because Petitioner did not preserve this issue for appeal, the Court of Appeals reviewed this Court's decision for plain error and rejected Petitioner's claim. *Id.* Petitioner now argues that trial counsel provided ineffective assistance, because he would have won on appeal under a lesser standard of review had counsel preserved this issue in the record. *See* Pet'r's Mot. 15.

Russell's expert and lay witness testimony. *See Baptiste*, 596 F.3d at 223-24. Petitioner, having lost this challenge on appeal under plain error review, now claims that trial counsel should have objected to Detective Russell's testimony, because doing so would have preserved the issue for appeal. *See* Pet'r's Mot. 21. Petitioner believes that trial counsel's failure to do so "precluded a finding in favor of [him]" on his appeal. *Id.*

> 1. Petitioner fails to illustrate any part of Detective Russell's testimony that improperly mixed lay witness and expert testimony.

Under *Strickland*, Petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690. Petitioner's Motion to Vacate, however, does not identify instances alleging that Detective Russell "provided factual testimony . . . alongside subjective 'translations'" as an expert witness. Pet'r's Mot. 19. On his appeal to the United States Court of Appeals for the Fourth Circuit, Petitioner alleged two instances where Detective Russell simultaneously described the contents of a wiretap and interpreted the statements in his capacity as an expert. Because Petitioner provides no evidence of improperly mixed expert and lay witness testimony in his Motion to Vacate, this Court assumes that Petitioner's argument refers to the two incidents upon which he relied in his appeal.

Petitioner's first example involves Detective Russell's description of the weather during an instance of wiretap monitoring. In the middle of Detective Russell's expert testimony, the Government asked, "By the way, what was the weather like that night?," to which Detective Russell responded, "It was freezing rain." *Baptiste*, 586 F.3d at 225. Petitioner claimed that this exchange between Detective Russell and the Government resulted in juror confusion regarding the differences between Detective Russell's lay witness and expert testimony. *See id.* Petitioner, however, does not explain how Detective Russell's description of the weather would cause the jury to treat all of his expert opinion as factual testimony. The Court of Appeals was skeptical of Petitioner's claim, because it "fail[ed] to see . . . how this statement about the weather would confuse the jury." *Id.* Furthermore, testimony about the weather had no bearing on the central issue in the case—Petitioner's role in the drug conspiracy. *See id.*

Considering that any possible juror confusion concerned only an insignificant portion of Detective Russell's testimony, Petitioner fails to show that it counsel acted unreasonably when he did not object to this part of Detective's Russell's testimony.

Petitioner's second example of insufficient delineation of Detective Russell's lay witness and expert testimony involved the monitoring of a phone call between Petitioner and Larry Brown. In the phone call, Larry Brown asked Petitioner to pick him up from a Shop Rite grocery store. *See id.* Detective Russell testified that the purpose of this phone call was for Petitioner to ascertain Brown's location. *See id.* On appeal, Petitioner argued that Detective Russell's testimony used his expert opinion to make a factual statement, because he interpreted the purpose of the phone call for the jury. *See id.* The Court of Appeals, however, found this example "unavailing," because the testimony cited by Petitioner was "hardly a translation of the call for which [Detective Russell's] expertise would be required." *Baptiste*, 596 F.3d at 225-26. Trial counsel had no basis to reasonably object to Detective Russell's testimony regarding this phone call.

Petitioner's claim of ineffective assistance of counsel due to trial counsel's failure to object to Detective Russell's testimony falls flat. The two examples of potentially confusing testimony that he provides are not convincing, and trial counsel had no reasonable basis to object to either piece of testimony. Accordingly, Petitioner has not satisfied the first prong of *Strickland*, because he does not show that trial counsel's conduct was objectively unreasonable.

> 2. Trial counsel's failure to object to Detective Russell's testimony did not cause any prejudice to Petitioner.

Even if Petitioner demonstrated that Detective Russell's witness and expert testimony were not properly delineated, he does not prove that he suffered prejudice as a result of counsel's failure to object to the improper testimony. Under the second prong of *Strickland*, Petitioner must demonstrate a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688. When making this determination, this Court "must consider the totality of the evidence before the . . . jury." *Id.* at 695.

Petitioner argues that not objecting to Detective Russell's testimony resulted in prejudice to his case, because the insufficient delineation between the lay witness and expert testimony caused the jury to give undue weight to factual statements made by Detective Russell. Pet'r's Mot. 19. Even if trial counsel acted unreasonably in his failure to object to Detective Russell's testimony, such an error would not have affected the outcome of this case. *See United States v. Higgs*, 663 F.3d 726, 742 (4th Cir. 2011) (holding that the evidence against the defendant was so great that an act of omission by defense counsel did not affect the outcome of the verdict).

The Government presented a vast amount of evidence against Petitioner. First, police detectives obtained numerous wiretapped calls that signified Petitioner's involvement in the cocaine transactions. *See* Gov.'s Resp. at 35. Second, surveillance conducted of Petitioner's residence uncovered numerous meetings during which drug transactions took place. *See id.* Third, searches made incident to Petitioner's arrest provided ample evidence of drug activity. *See id.* Finally, witness testimony, including testimony by codefendants, linked Petitioner to the cocaine ring conspiracy. *See id.* Even if Petitioner's trial counsel had convinced the Court to exclude the testimony by Detective Russell at issue in this Motion, this Court finds that it would not have affected the outcome of this case. Accordingly, Petitioner does not meet his burden under the second prong of *Strickland*.

Petitioner also asserts that trial counsel's failure to object to Russell's testimony resulted in the Court of Appeals reviewing it for plain error, which "precluded a finding in favor of [Petitioner]." *See* Pet'r's Mot. 21. Petitioner argues that an objection by trial counsel would have allowed the Court of Appeals to review this issue for harmless, rather than plain, error. *See United States v. Brown*, 52 F. App'x 516, 521 (4th Cir. 2003) (reviewing a court's improper admission of testimony under the standard of "harmless error" when defendant objected to its admission at trial). While Petitioner presses for a different analysis than that required under *Strickland*, this Court will nonetheless consider Petitioner's argument. Petitioner neglects to offer any evidence demonstrating that the Court of Appeals would have reached a different conclusion if it had analyzed the admission of Detective Russell's testimony for harmless error. In fact, as discussed above, the Court of Appeals thoroughly doubted the legitimacy of

Petitioner's claim based on the two examples of allegedly improper testimony that Petitioner provided. *See Baptiste*, 596 F.3d at 225. Furthermore, the Court of Appeals noted that Petitioner did not assert Detective Russell's factual testimony was inaccurate. *See id.* at 225. Therefore, the Court of Appeals determined that "even if the jury had assigned greater credibility to Detective Russell's factual testimony due to his dual role, it would not have been misled as to the facts." *Id.* at 226. In light of the Fourth Circuit's opinion on Petitioner's appeal, Petitioner fails to support his claim that the Court of Appeals would have overturned his conviction under a lesser standard of review.

    C.  *Petitioner's* Miranda *Rights*

Petitioner also asserts that trial counsel should have challenged the Government on whether the police officers properly issued Petitioner his *Miranda* warnings[4] before recording a video interview. Specifically, Petitioner argues that an objection by trial counsel would have precluded the admission of the video interview in which Petitioner made inculpatory statements. *See* Pet'r's Mot. 22. Petitioner's claim fails, because the officers advised him of his *Miranda* rights and because Petitioner made a valid waiver of those rights after being advised of them. Consequently, trial counsel acted reasonably when he did not raise a *Miranda* challenge.

        1.  Trial counsel's failure to make a *Miranda* challenge was not objectively unreasonable.

            a.  Petitioner's Receipt of *Miranda* Rights

First, Petitioner asserts that he never received his *Miranda* rights before the police detectives conducted their interrogation. *See* Pet'r's Mot. 22. At trial, Detective Jim Russell's testimony detailed the manner in which officers advised Petitioner of his *Miranda* rights after they took him into custody. *See* Gov.'s Resp., Ex. 3 1-8. Before the officers conducted their interview, they recited the contents of an "advice of rights" form that listed Petitioner's *Miranda* rights. *See id.* at 2. The officers also read a portion of the form indicating that Petitioner had the option to waive his *Miranda* rights. *See id.* The detectives then gave Petitioner the form so he could review it. *See id.* Petitioner proceeded to waive his

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966)

*Miranda* rights by signing the form. *See* Gov.'s Resp., Ex. 4. Detective Russell observed that Petitioner was paying attention and "appear[ed] to understand the nature of what was going on." *See* Gov.'s Resp. 3-6, Ex. 3.

Petitioner offers no evidence demonstrating that the detectives never recited his *Miranda* rights. He merely makes an assertion to this effect in his Motion to Vacate, without explaining the grounds on which trial counsel should have objected. *See* Pet'r's Mot. 22. The Fourth Circuit has held that courts should be wary of self-serving statements made by defendants subsequent to a waiver of *Miranda* rights. *See United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997) (attaching "little significance" to a defendant's testimony that he felt intimidated by officers while in custody without any supporting evidence). Due to a lack of evidence to the contrary, this Court finds that police detectives properly gave Petitioner his *Miranda* rights and that trial counsel acted reasonably when he did not object to Detective Russell's testimony.

b. Petitioner's Waiver of *Miranda* Rights

Under *Miranda v. Arizona* a suspect in custody may waive his constitutional rights, "provided the waiver is made voluntarily, knowingly, and intelligently." 384 U.S. 436, 444 (1966). In this case, Petitioner does not challenge his waiver on grounds that he did not make it voluntarily. *See* Pet'r's Mot. 22. Even if Petitioner made such a claim, it would have no support. The Supreme Court has held that voluntary statements are those that are the product of "free and deliberate choice rather than intimidation, coercion, or deception." *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010) (citation and internal quotation marks omitted). Petitioner does not allege any such coercion on the part of the Government. *See* Pet'r's Mot. 22. Furthermore, Detective Russell stated clearly at trial that the officers used no force or intimidation against Petitioner. *See* Gov.'s Resp. 3-8, Ex. 3.

Petitioner asserts that he did not make a knowing and intelligent waiver of his *Miranda* rights. Pet'r's Mot. 22. He does not, however, provide any basis for this claim. As described above, Detective Russell testified at trial that police detectives carefully advised him of his *Miranda* rights. *See* Gov.'s Resp. 6-8, Ex. 3. Detective Russell observed Petitioner as being alert and attentive while the detectives

read the *Miranda* waiver form. *See id.* at 3, 6. The form was written in plain English, and Petitioner signed his name at the bottom signifying his agreement to waive his rights.[5] *See* Gov.'s Resp., Ex. 4. Petitioner has not explained the circumstances by which he did not understand what he read or signed prior to his custodial interview. This Court finds that trial counsel acted reasonably when he did not object to Petitioner's waiver of his *Miranda* rights, because counsel did not have a valid basis to challenge such a waiver. Thus, Petitioner's *Strickland* claim regarding his *Miranda* rights fails for his inability to demonstrate that trial counsel's performance was objectively unreasonable.

> 2. The admission of the video interview did not cause prejudice to Petitioner because of the overwhelming evidence against him.

Petitioner, who cannot show objective unreasonableness with regard to his *Miranda* claim, also fails to meet the second *Strickland* prong. In order to satisfy the second prong of *Strickland*, Petitioner must show a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688. When making this determination, this Court "must consider the totality of the evidence before the . . . jury." *Id.* at 695. Petitioner fails to allege any prejudice resulting from trial counsel's failure to object to the waiver of his *Miranda* rights. *See* Pet'r's Mot. 22.

As discussed in Section II.B.2 of this Memorandum Opinion, Petitioner faced an overwhelming amount of evidence against him at trial, even without considering the video interview of the Petitioner. The Government presented numerous wiretapped calls and observations from surveillance indicating Petitioner's involvement in multiple drug deals. *See* Gov.'s Resp. at 35. Furthermore, police officers seized substantial evidence—including six cell phones, false identifications, and large amounts of cash—during searches made incident to Petitioner's arrest. *See id.* Finally, witnesses at trial identified Petitioner as a major cocaine dealer in the area. *See id.* After considering the bulk of the evidence against Petitioner, this Court finds that the admission of the video interview did not prejudice the verdict in this

---

[5] The Fourth Circuit in *United States v. Guay*, 108 F.3d 545, 549 (4th Cir. 1997), held that a limited understanding of English could render a waiver as invalid. Petitioner, however, does not make any such assertion here, and nothing in the record indicates that he cannot read English.

case. *See United States v. Higgs*, 663 F.3d 726, 742 (4th Cir. 2011). Therefore, Petitioner did not suffer any prejudice as a result of trial counsel's actions regarding the *Miranda* warnings, and Petitioner does not satisfy the second prong of *Strickland*.

    D. *Jury Instruction on Multiple Conspiracies*

Finally, Petitioner alleges that trial counsel provided ineffective assistance when he did not pursue a jury instruction explaining the possibility that multiple conspiracies existed under the facts of this case. Petitioner believes that such a jury instruction would have aided his defense, because he could have shown that he was not part of the conspiracy charged in Count One of the indictment.[6] *See* Pet'r's Mot. 12. A theory of multiple conspiracies works in a defendant's favor when the defendant is involved in a separate conspiracy to achieve a distinct purpose from the conspiracy listed in the indictment. *See* Pet'r's Mot., Ex. F. Petitioner proposes that he sold cocaine to Larry Brown without knowledge of the precise people who purchased cocaine from Brown. *See* Pet'r's Mot. 12. Petitioner claims that this lack of knowledge absolves him of the conspiracy charge in the indictment. *See id*. at 12-13.

    1. Trial counsel did not act in an objectively unreasonable manner when he did not pursue a jury instruction on multiple conspiracies.

After reviewing Petitioner's argument, this Court finds that Petitioner misconstrues the concept of multiple conspiracies, and that trial counsel acted reasonably when he chose not to pursue such an instruction. In order for Petitioner to demonstrate that he took part in a separate conspiracy, he must show that the conspiracy in which he was involved was completely unrelated to and separate from the conspiracy charged in the indictment. *See, e.g., United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) ("A multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved only in separate conspiracies unrelated to the overall conspiracy charged in the indictment." (citation omitted)).

Petitioner fails to provide any evidence showing that he had involvement in any conspiracy separate from the conspiracy at issue in this case. Police detectives observed Petitioner dealing cocaine to

---

[6] Petitioner cites *United States v. Johansen*, 56 F.3d 347 (2d Cir. 1995); *United States v. Rosnow*, 977 F.2d 399 (8th Cir. 1992); and *United States v. Lokey*, 945 F.2d 825 (5th Cir. 1991).

Brown over a period of at least one year. *See Baptiste*, 596 F.3d at 217. The evidence at trial included multiple witnesses' testimonies about Petitioner's sale of cocaine to Brown. *See* Gov.'s Resp., Ex. 3 10-11. Finally, Petitioner indicated his involvement with Brown in his video interview. *Id.* Therefore, there was ample evidence in the case demonstrating Petitioner's participation in the conspiracy charged in the indictment.

Furthermore, Petitioner does not succeed on his claim that he did not know the identities of Brown's associates, because "one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." *United States v. Nunez*, 432 F.3d 573, 578 (4th Cir. 2005) (citing *United States v. Banks,* 10 F.3d 1044, 1054 (4th Cir.1993)). A single drug conspiracy does not need to have "a discrete identifiable organizational structure." *Id.* Rather, a single drug conspiracy is often "comprised of a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." *Id.* As noted above, the evidence in this case convincingly demonstrated Petitioner's involvement in the drug conspiracy. His lack of knowledge of the other members of the conspiracy is irrelevant, as long as he knew that other members existed. Therefore, Petitioner has failed to demonstrate how trial counsel acted unreasonably when he did not pursue a jury instruction on multiple conspiracies.

>2. Petitioner does not demonstrate that he suffered from prejudice as a result of trial counsel's failure to pursue a jury instruction on multiple conspiracies.

As discussed above, trial counsel acted reasonably when he did not pursue a jury instruction on multiple conspiracies. Because Petitioner's claim is completely meritless, it could not have affected the outcome of the trial. Thus, this Court need not consider the second prong of *Strickland*. *See Orbe v. True*, 233 F. Supp. 2d 749, 765 (E.D. Va. 2002) ("When ineffective assistance claims are based on the failure to raise, develop, or properly present an underlying claim, an examination of the merits of the underlying claim will frequently be dispositive of the ineffective assistance claim. If the underlying claim

is meritless, counsel's failure to pursue it can be neither unreasonable nor prejudicial, and no further inquiry is necessary.").

Even assuming Petitioner could demonstrate that trial counsel performed unreasonably, Petitioner's claim still fails under the second prong of *Strickland*.  Petitioner argues that the result of his case would have been different if the jury found him innocent of the conspiracy, because this Court may have sentenced Petitioner to a lesser sentence.  Section 841(b)(ii)(I) of Title 21 provides for a maximum forty-year prison term for anyone convicted of distributing at least 500 grams of cocaine.  Because Petitioner faced four counts of possession with intent to distribute over 500 grams of cocaine, he faced a maximum 160-year term of imprisonment.  Even without the conspiracy charge, this Court could have sentenced Petitioner to the 300-month prison term that he received.  Therefore, Petitioner has failed to prove the existence of a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 688.

## CONCLUSION

Petitioner does not demonstrate that trial counsel provided ineffective assistance in his case. Petitioner also fails to prove that trial counsel had a conflict of interest due to his prior representation of a codefendant.  For the reasons stated above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 271) is DENIED.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (2000).  A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable.  *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: March 25, 2013

　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　Richard D. Bennett
　　　　　　　　　　　　　　　　　　United States District Judge